**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN MARTINEZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15 C 7144** |
| | ) | |
| **AMERICAN AIRLINES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

John Martinez has sued American Airlines under the Americans with Disabilities

Act (ADA) for discrimination, failure to accommodate, and retaliation. American has

moved for summary judgment on all of Martinez's claims. For the reasons stated below,

the Court grants American's motion.

**Background**

Martinez began working for American as an aviation maintenance technician

(AMT) in 1985. AMTs are responsible for assembling, repairing, and installing airplane

parts. They must be able to move ladders and scaffolding, to tow airplanes, and to work

up to eighty feet above the ground. They also must be able to lift and lower 68 pounds

from below knee height to shoulder height approximately once per day. They must be

able to lift 27 pounds above shoulder height while standing approximately once per

week. AMTs must also be able to push and pull 90 pounds of force at waist height

approximately twice per week.

By January 2010, Martinez was earning $36.75 per hour as an AMT. That month, Martinez suffered serious injuries in a work accident, which put him in the hospital for multiple weeks and resulted in more than a dozen surgeries. He shattered his right femur, fractured both his right ankle and his left knee, suffered cartilage damage to both shoulders, and received four damaged disks in his back. Because of his extensive injuries, Martinez took a medical leave of absence from his AMT position at American, during which he was bedridden for more than a year and continued to have surgeries to attempt to repair the damage.

As an AMT, Martinez was a member of the Transport Workers Union of America, AFL-CIO. His employment with American was governed by a collective bargaining agreement between American and the union. In September 2012, American and the union entered into an agreement to help American reduce its overall workforce. The agreement established the "early out incentive allowance," which provided an additional severance package for eligible employees who chose to leave the company. American mailed information about this program to its employees along with instructions on how to participate in the program. The notice stated that employees wishing to opt into the program had to notify American between September 4 and September 25, 2012. Martinez alleges that he never received this notice and did not learn about the program until late 2013, while he was still on medical leave. In October 2013, Martinez's counsel attempted to speak with someone from American to determine whether Martinez could participate in the program. American ultimately denied Martinez's request to participate, indicating that the window to sign up had closed.

In March 2014, Martinez filed a charge of discrimination with the Illinois

Department of Human Rights (IDHR) and the U.S. Equal Employment Opportunity Commission (EEOC) in which he alleged that American discriminated against him on the basis of his disability when it denied his request to participate in the early out program. In May 2014, Martinez also filed a separate lawsuit in the Northern District of Illinois, alleging that the denial constituted a breach of the collective bargaining agreement. In October 2014, Judge Leinenweber dismissed the lawsuit for lack of subject matter jurisdiction. Martinez then requested arbitration of the breach of contract claim.

By August 2014, Martinez had been on medical leave for four years and six months. American's leave policies state that medical leave shall last for no longer than five years. In August 2014, someone in American's human resources department sent Martinez a letter informing him that his medical leave would expire on February 13, 2015. The letter also indicated that if Martinez believed that he was a qualified individual with a disability, he should contact his manager to discuss possible accommodations to return to work. Around December 2014, Martinez provided American with doctors' certifications indicating that he could return to work only in a limited capacity. Specifically, Martinez's orthopedic surgeon indicated that he (1) could not lift or carry more than five pounds; (2) could not push or pull more than five pounds; (3) could not do any work using his right leg; (4) could not climb any ladders, stairs, or ramps; (5) could not do any overhead work; and (6) was restricted to sedentary work only. Two additional doctors confirmed that Martinez could return to work but was limited to sedentary work only.

After receiving these certifications, Sara Baldonado—an American employee in

the human resources department—wrote to Martinez in February 2015 instructing him to contact her if he would like to discuss possible accommodations based on his medical restrictions.  Martinez and Baldonado first spoke on February 9, 2015, and the two had multiple conversations over the next four months regarding possible disability accommodations.  Martinez alleges that during this time, Baldonado was largely unresponsive to his requests for information.  He wrote Baldonado a number of letters during this period, detailing how he had left her messages and had not heard back.  Baldonado states that during this period, she was searching for vacant positions that matched both Martinez's restrictions and his qualifications and that she and Martinez spoke at least four times regarding accommodations.

Both parties agree that, over the course of their conversations, Baldonado informed Martinez of two vacant positions that might accommodate his disability.  One position was for a reservations agent in Phoenix, and one was for a concierge position in Chicago.  The pay for the position in Phoenix was $10.21 per hour.  American contends that Baldonado offered both of these positions to Martinez and that he turned them down.  Martinez contends that Baldonado never offered him the positions but merely informed him that the positions might be available and told him that she would let him know.  In his letters, Martinez requested details in writing of both positions and a formal offer.  Both parties agree that American never sent this information.  Baldonado says that this is because she discussed the details with Martinez over the phone instead.

American contends that Baldonado continued to search for other vacant positions within the company that would meet Martinez's restrictions but did not find any

for which he was qualified and that would not have constituted a promotion from his prior position of AMT. Martinez alleges that there were additional positions that fit these criteria that American could have offered to him, and that Evita Rodriguez, the managing director of American's aircraft maintenance division, admitted that these positions existed. Martinez also says that he requested a transfer to certain positions that he located on American's website, but American refused.

American contends that during this time period, Martinez had full access to the company's public website to look for vacant positions himself. Martinez denies that he had complete access. Specifically, Martinez says that Baldonado told him to look for vacant positions on American's public website as well as its internal site known as JetNet. Martinez contends that he was unable to access JetNet and, when he contacted American, was told that only current employees could access the site. Further, Martinez alleges that his limited knowledge of the jobs posted on the public website hindered his efforts to search for other positions. He says that he should have been offered a job in the positions of crew chief, AMT supervisor, ramp tower controller, or staff support.

On June 19 2015, American terminated Martinez's employment, citing the fact that he had been on medical leave for more than five years, had refused the two positions American says it offered him, and had failed to identify any other reasonable accommodations. In August 2015, Martinez filed the present suit. He alleges that American discriminated against him by failing to notify him about the early out program and then denying his request to participate and by failing to reasonably accommodate his disability. Martinez also alleges that, in response to his first charge of discrimination,

American retaliated by failing to perform an adequate search for reasonable accommodations and ultimately by terminating his employment. These claims were the subject of a second charge of discrimination that Martinez filed with the EEOC in November 2015; they were added to this suit by way of an amended complaint filed in March 2016.

## Discussion

American has moved for summary judgment. It first argues that this Court lacks subject matter jurisdiction over Martinez's disability discrimination claim regarding the early out program. American also argues, in the alternative, that Martinez cannot prevail on the merits of this claim. American next argues that it is entitled to summary judgment on Martinez's failure to accommodate claim because he has not shown that there were other reasonable accommodations that the company failed to offer. Finally, American argues that it is entitled to summary judgment on Martinez's retaliation claim because he cannot establish a prima facie case and cannot prove that its proffered reason for its conduct is pretextual.

Summary judgment is appropriate only when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 853 (7th Cir. 2015). The Court examines the record in the light most favorable to the non-moving party, "resolving all evidentiary conflicts in [his] favor and according [him] the benefit of all reasonable inferences that may be drawn from the record." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012).

## I.    Early out claim

Martinez claims that American failed to notify him of the early out program and denied his request to participate due to his disability.  Though Martinez does not expressly say as much, this claim appears to be one of disparate treatment.  *See Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001) (noting that a disparate treatment claim is one in which "the plaintiff attempts to show that she was treated differently than other workers on the basis of a protected characteristic"); *see also* Am. Compl. ¶ 21 ("In direct violation of the ADA, Defendant, by its agents and employees, did not provide Plaintiff with the same benefits that were afforded to non-disabled employees.").  American argues that this claim qualifies as a minor dispute under the Railway Labor Act (RLA) and therefore must be arbitrated.  American further argues, in the alternative, that Martinez has failed to provide sufficient evidence to support his claim of disparate treatment.

### A.    Jurisdiction

Under the RLA, all minor disputes "must be adjudicated under RLA mechanisms, which include an employer's internal dispute-resolution procedures and an adjustment board established by the unions and the employer."  *Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 658 (7th Cir. 2001).  Minor disputes are "subject to mandatory and exclusive arbitration."  *Id.*  A claim qualifies as a minor dispute when resolution of the claim requires interpretation of the collective bargaining agreement.  *Id.*

Martinez's disparate treatment claim does not qualify as a minor dispute because it does not require interpretation of the collective bargaining agreement.  American argues that it incorporated the early out program into the collective bargaining

agreement, and Martinez does not argue otherwise. *See* Def.'s Mem. in Support of Mot. for Summ. J. 10. But Martinez does not contend that American's conduct violated the terms of the collective bargaining agreement or the memorandum establishing the early out program. Instead, Martinez claims that American treated him differently with respect to the program due to his disability. Am. Compl. ¶ 20–21.

The Seventh Circuit has indicated that this type of claim does not qualify as a minor dispute under the RLA. *See generally Carlson v. CSX Transp., Inc.*, 758 F.3d 819 (7th Cir. 2014). In *Carlson*, the Court distinguished a claim that plaintiff was entitled to a particular job under the collective bargaining agreement from a claim that plaintiff's job applications were rejected because of her sex. *Id.* at 833. The Seventh Circuit found that the latter claim depended "on a factual inquiry into any retaliatory or discriminatory motive of the employer rather than on an interpretation of the collective bargaining agreement." *Id.* (internal quotation marks omitted). The same is true of Martinez's disparate treatment claim. Resolution of this claim does not require interpretation of the collective bargaining agreement. Rather, it involves an inquiry into American's motive in failing to notify Martinez and later denying his request to participate in the Early Out program. The fact that American's alleged motive for its denial—that time had expired under the terms of the program for electing to participate—stems from the collective bargaining agreement does not make Martinez's claim a minor dispute. As the Seventh Circuit has indicated, "a claim is not barred simply because the action challenged by the plaintiff is arguably justified by the terms of the [collective bargaining agreement]." *Id* (internal quotation marks omitted). The Court need not interpret the collective bargaining agreement to determine whether Martinez

can demonstrate that other non-disabled employees received notice of the program and were permitted to opt into the early out program after the deadline had passed. The Court therefore has jurisdiction to consider Martinez's disparate treatment claim.

American contends that another judge has already considered this issue and determined that Martinez's claim qualifies as a minor dispute. Def.'s Mem. in Support of Mot. for Summ. J. 10 & n.4. As indicated earlier, Martinez filed a separate lawsuit in federal court in May 2014 that Judge Leinenweber dismissed after concluding that the asserted claim was a minor dispute under the RLA. Def.'s Stat. of Undisputed Material Facts (SUMF), Ex. 10 (order of dismissal). But Martinez's claim in that case was different from his present claim. In the prior case, Martinez brought a breach of contract claim, alleging that American had violated the terms of the collective bargaining agreement by denying him participation in the early out program. Def.'s SUMF, Ex. 9 (May 2014 Complaint) ¶¶ 18–23. Judge Leinenweber concluded that this constituted a minor dispute because Martinez alleged that American had wrongfully denied him his bargained-for rights as a party to the collective bargaining agreement. Order of dismissal at 2. The claim before Judge Leinenweber rested solely on the rights created by the collective bargaining agreement, and thus it clearly constituted a minor dispute within the meaning of the RLA. The claim before this Court rests on American's allegedly improper motive and therefore does not qualify as a minor dispute. The Court concludes that it has jurisdiction over Martinez's disparate treatment claim.

### B. Merits

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of

employees, . . . and other terms, conditions, and privileges of employment."  42 U.S.C.

§ 12112(a).  To sustain a claim of disparate treatment, Martinez must show "that he is

protected by the ADA . . . and that his employer violated the ADA by taking adverse

action against him because of his disability."  *Timmons v. Gen. Motors Corp.*, 469 F.3d

1122, 1127 (7th Cir. 2006).  Martinez claims that American took two adverse actions

due to his disability:  its failure to notify him of the early out program and its denial of his

request to participate.

American does not dispute that Martinez is a qualified individual with a disability.

It argues first that it did notify Martinez of the early out program and that, in any event,

Martinez has failed to show that any failure to notify was due to his disability.  Though

American does not dispute that it later denied Martinez's request to participate, it argues

that he has failed to show that its denial of his request to participate was a result of his

disability.

## 1.    Failure to notify

Martinez testifies that he never received any notice of the early out program.

Def.'s SUMF, Ex. 1 (Martinez Dep.) at 165–66.  Though American does not admit that it

failed to notify Martinez, it argues that he has failed to show that any alleged failure was

due to his disability.  *See id.* at 11–12.  Assuming that Martinez did not receive notice,

he has not provided evidence from which a reasonable factfinder could conclude that

this was due to his disability.

The Seventh Circuit has recently abandoned the distinction between the direct

and indirect methods of proving employment discrimination.  *See Ortiz v. Werner*

*Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).  A court is to address only "the critical

question, which is simply whether a reasonable jury could infer prohibited discrimination." *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 899 (7th Cir. 2016) (internal quotation marks omitted).  The only evidence that Martinez offers in support of his claim is the fact that he was on medical leave during the time that American mailed notice of the program.  Pl.'s Resp. at 20.  Martinez concedes that he does not know who sent the notice or whether that person even knew he was disabled, let alone chose not to send him notice due to his disability.  Pl.'s Resp. to Def.'s SUMF ¶ 45.  In these circumstances, the bare fact that Martinez was on disability at the time notice was sent is insufficient to permit a reasonable jury to find that American failed to notify him of the program due to his disability.

### 2. Denial of request to participate

Martinez also contends that he suffered disparate treatment when American denied his request to participate in the early out program, but he again fails to provide evidence from which a reasonable jury could find in his favor on this claim.  First, Martinez has no evidence that he was treated differently from those without a disability. He offers no evidence that American granted any requests to participate that were submitted at a comparably late date by employees who were not disabled.  To the extent that Martinez alleges he was treated differently than those who opted into the program in September 2012, American has a legitimate reason for denying his request. Martinez contacted American about the program in October 2013, almost 13 months after the deadline for opting in had passed.  *See* Pl.'s Resp. to Def.'s SUMF, Ex. H at 1. When an employer can articulate a legitimate, non-discriminatory reason for its conduct, the plaintiff is then required to present evidence that the stated reason is a pretext in

order to survive summary judgment. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, No. 15-2132, 2017 WL 129114, at *4-5 (7th Cir. Jan. 13, 2017) (stating that the burden-shifting framework survives *Ortiz*). Martinez has not offered any evidence that would cast doubt on American's rationale for denying his request or that would otherwise suggest discriminatory intent. Accordingly, no reasonable jury could find that American subjected him to unlawful disparate treatment. American is entitled to summary judgment on Martinez's disparate treatment claim.

## II.    Failure to accommodate

The ADA requires an employer to make reasonable accommodations for a disabled employee unless doing so would impose an undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A); *see also EEOC v. AutoZone, Inc.*, 630 F.3d 635, 639 (7th Cir. 2010). "In order to establish a prima facie [case] for failure to accommodate, a plaintiff must establish that (1) the plaintiff is a qualified individual with a disability; (2) the employer was aware of the disability; and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Dunderdale*, 807 F.3d at 853. Martinez appears to contend that there are two ways in which American's efforts failed to constitute reasonable accommodation: it refused to restore him to the AMT position, and it performed an inadequate search for positions to which it could transfer him.

### A.    AMT position

Martinez alleges that American could have returned him to his position as an AMT in order to reasonably accommodate his disability. American argues that Martinez's physical limitations prevented him from performing the job. As a general rule, an employer is not required to strip a current job of its principal duties to

accommodate a disabled employee. *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, and 22nd Judicial Circuits*, 601 F.3d 674, 680 (7th Cir. 2010). Martinez must offer evidence that would permit a reasonable jury "to conclude that [he] would have been able to perform the essential functions of [his] job with a reasonable accommodation." *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013). In determining whether a job function is essential, a court looks to "the employer's judgment, written job descriptions, the amount of time spent on the function, and the experience of those who previously or currently hold the position." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 534 (7th Cir. 2013).

Martinez has failed to show that he would be able to perform the essential functions of the AMT position in light of his disability. American's description of the AMT position includes a physical demand summary that lists the physical requirements for the position. Martinez Dep., Ex. 1 at 5. The demand summary states that AMTs must be able to lift and lower 68 pounds from below knee height to shoulder height and must be able to lift 27 pounds above shoulder height. *Id.* AMTs must also be able to push and pull ninety pounds of force at waist height. *Id.* It is undisputed that Martinez was not capable of meeting these requirements at the time that he and Baldonado were looking for accommodations. Martinez's orthopedic surgeon evaluated him and determined that he could not lift or carry more than five pounds; could not push or pull more than five pounds; could not climb ladders, stairs, or ramps; could not perform overhead work; and was restricted to sedentary work only. *Id.* at 7. Two other doctors confirmed that Martinez's disability restricted him to sedentary work only. *Id.* at 8–9.

Further, Martinez has not presented evidence that would create a genuine

dispute regarding whether these physical requirements were "essential functions" of the AMT position. American includes the list of physical requirements as part of the AMT job description, and Martinez has not offered any evidence challenging the accuracy of the list. Martinez himself testified that approximately fifty percent of the work performed by an AMT is done while standing. Pl.'s Resp. to Def.'s SUMF, Ex. 1 at 51–52. His on-the-job experience thus supports American's contention that standing and other strenuous physical labor is essential to the AMT position.

Martinez argues that he could perform the AMT position because he was still able to do "bench work," answer phones, drive vehicles, and open doors. Pl.'s Stat. of Additional Facts (SAF) ¶ 20. But the fact that the AMT position involves some tasks that were not physically demanding—such as sitting or driving—does not indicate that the physical requirements are not essential. *See Peters v. City of Mauston*, 311 F.3d 835, 845 (7th Cir. 2002) (noting that the fact that heavy lifting occurs infrequently does not preclude it from being an essential function). Martinez also points to his own testimony that "[t]he parts that [AMTs] put on airplanes, it's always done with two or three guys. It's not manhandled by one person." Pl.'s SAF, Ex. B at 296. He essentially argues that he could have worked with other AMTs to avoid the full physical demand. But employers are not required to permit disabled employees to pass off essential functions to other employees. *See Peters*, 311 F.3d at 845; *Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000) (indicating that an employer "is not required to shuffle job responsibilities amongst employees" to accommodate an employee's disability). Where an employer has a valid reason for requiring certain duties of all its employees, these duties qualify as essential functions of the job. *See Basith v. Cook Cty.*, 241 F.3d

919, 929 (7th Cir. 2001).

The Court concludes that it is not genuinely disputed that physical labor consistent with the AMT job description is an essential function of the job. Because it is undisputed that Martinez could not perform these functions during the period when he sought an accommodation, American was not required to return him to the AMT position.

**B.      Search for alternative positions**

If an employee is unable to perform his current job, the employer must consider reassignment as one form of accommodation. *See Jackson v. City of Chicago*, 414 F.3d 806, 812–13 (7th Cir. 2005). An employer is required to engage in an "interactive process" with its employee in order to determine appropriate accommodations under the ADA. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1061 (7th Cir. 2014). The employer bears the burden of exploring options for reasonable accommodation. *Jackson*, 414 F.3d at 813. When a plaintiff alleges that the employer failed to adequately explore transfers that would constitute reasonable accommodations, he bears the burden of showing that a vacant position existed for which he was qualified. *Id.* at 813; *see also Dunderdale*, 807 F.3d at 856. If the plaintiff shows that a position existed, the court will consider whether the employer's failure to offer that accommodation was due to a breakdown in the interactive process. *Jackson*, 414 F.3d at 813.

Martinez has failed to provide evidence from which a reasonable jury could find that there were vacant positions at American that the company should have made available to him. Baldonado—the human resources representative assigned to help

find Martinez an accommodation—searched for alternative positions to which he could potentially be transferred. Baldonado located two positions, a reservation position in Phoenix and a concierge position in Chicago, and she informed Martinez of these positions. Martinez contends that the fact that Baldonado found only two positions throughout the entire company strongly suggests that her search was inadequate. This, however, is argument, not evidence, and Martinez has offered no evidence of other available positions that Baldonado either did not locate or did not offer.

Martinez contends that American could have transferred him to the positions of crew chief, AMT supervisor, ramp tower controller, or staff support. But he does not provide any evidence that there were actual vacancies in any of these positions during the relevant period. He points to testimony by Rodriguez as evidence that positions must have been available. Pl.'s SAF ¶ 21. Rodriguez testified that, during the approximately six years she has worked for American in Chicago, the company has hired ten to twelve crew chiefs. Pl.'s SAF, Ex. D at 185. But her testimony does not indicate that any of these vacancies existed between February 2015 and June 2015, the period when Martinez and Baldonado were searching for positions.

Further, Martinez concedes that the crew chief, AMT supervisor, and ramp tower controller positions would have constituted promotions over his previous job as an AMT. Pl.'s Resp. to Def.'s SUMF ¶¶ 25–27. Although employers may be required to transfer employees to vacant positions in order to provide reasonable accommodations, employers do not "have to accommodate a disabled employee by promoting him or her to a higher level position." *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 699 (7th Cir. 1998).

The only other position that Martinez mentions as a possible accommodation is the staff support position. Martinez, however, was unqualified for this position, and the ADA does not require employers to abandon their "legitimate nondiscriminatory company policies defining job qualifications, prerequisites, and entitlements to intra-company transfers" when accommodating a disabled employee. *Dalton v. Subaru-Isuzu Automotive, Inc.*, 141 F.3d 667, 678 (7th Cir. 1998). American's staff support position requires a "[w]orking knowledge of Word, Excel and Outlook." Def.'s SUMF, Ex. 2 (Baldonado Dep.) at Ex. A. Martinez testified that he has never used Word, Excel, or Outlook. Def.'s SUMF, Ex. 4 (Martinez Dep. Part II) at 224. He also testified that he believes that the Microsoft Office Suite is "a form of internet." *Id.* Because Martinez does not meet the legitimate prerequisites for the staff support position, American was not required to offer him this position as a reasonable accommodation.

Martinez also argues that he is unable to show that any alternative positions existed because he was unable to access American's internal job-search site, JetNet, during the relevant period. Pl.'s Resp. 18. When Martinez spoke with Baldonado regarding reasonable accommodations, she told him that he should participate by searching JetNet for available positions. *See id.* Martinez had trouble accessing the website and was later informed that only current employees were able to access it, the implication being that he was unable to access the site while on medical leave. *See id.* This difficulty, however, does not excuse Martinez's failure, *as part of this case*, to provide evidence of alternative vacant positions. Baldonado informed Martinez during the search process that American lists all vacant positions on its public website as well. Pl.'s SAF, Ex. C (Full Baldonado Dep.) at 72. Martinez has not offered any evidence

indicating that he was not able to access the public site or that American failed to post vacancies on the public site. He therefore cannot justify his failure to locate alternative vacant positions. More significantly, American's motion for summary judgment was made after the close of discovery, a period during which Martinez had every opportunity to obtain evidence regarding positions that were vacant during the relevant period. Because Martinez has offered no evidence of any alternative positions that were vacant during the relevant time period, no reasonable jury could find that American failed to provide a reasonable accommodation for his disability.

Finally, Martinez argues that there was a breakdown in the interactive process. Pl.'s Resp. at 17–20. Specifically, he contends that Baldonado never provided details in writing regarding the two positions, she was hostile regarding his requests, and she was generally unresponsive. As previously noted, however, the issue of a breakdown in the process is significant only if Martinez can show that an alternative position existed. *See Jackson*, 414 F.3d at 813. Because Martinez failed to make that showing, the Court need not address his argument that the process broke down. American is entitled to summary judgment on Martinez's failure to accommodate claim.

## III. Retaliation

In count 2, Martinez alleges that American retaliated against him after he filed his March 2014 charge of discrimination. Specifically, Martinez alleges that American retaliated by failing to perform an adequate search for reasonable accommodations and later by terminating his employment. As discussed above, Martinez has not provided sufficient evidence from which a reasonable factfinder could conclude that American's search for reasonable accommodations was inadequate. Martinez therefore has no

viable claim of retaliation on this basis. The Court addresses only his claim based on his termination.

The ADA prohibits "employers from retaliating against employees who assert their right under the act to be free from discrimination." *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011) (citing 42 U.S.C. § 12203(a)). A plaintiff is required to prove that he engaged in a protected activity, he suffered an adverse employment action, and there is a causal link between the two. *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690 (7th Cir. 2010). As with discrimination claims, the Seventh Circuit has abandoned the distinction between direct and indirect evidence. *See Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016) (discussing a retaliation claim in the context of a Title VII claim). A court therefore focuses on whether the record contains evidence sufficient to permit a reasonable factfinder to conclude that a retaliatory motive caused the discharge. *Id.*

Martinez has not presented evidence from which a reasonable jury could find that American terminated his employment in retaliation for his charge of discrimination. Martinez first points to two incidents—his filing of the charge on March 5, 2014 and the EEOC's issuance of a right-to-sue letter on May 27, 2015—and argues that the temporal proximity between these events and his termination supports an inference of retaliatory motive. Pl.'s Resp. 24–25. The Seventh Circuit has indicated that "close temporal proximity" can provide evidence of causation in retaliation cases. *Anderson v. Donahoe*, 699 F.3d 989, 996 (7th Cir. 2012). And the parties agree that filing a charge of discrimination is protected activity. But Martinez filed his charge of discrimination in March 2014, thirteen months before he was fired in June 2015. This thirteen-month gap

is insufficient, without more, to support an inference of retaliatory motive. *Turner*, 699 F.3d at 996; *Carter v. Chicago State Univ.*, 778 F.3d 651, 658 (7th Cir. 2015) (finding a seven-month gap insufficient to raise an inference of causal connection).

Martinez did not receive a right-to sue-letter from the EEOC on this charge until May 27, 2015, less than four weeks before he was terminated on June 19, 2015. Martinez cites this relatively brief gap as supporting an inference of retaliation. The EEOC's issuance of a right-to-sue letter is not protected activity under the ADA. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *see also, e.g., Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208–09 (10th Cir. 2007); *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 n.6 (5th Cir. 2007); *Curtis v. Broward Cty.*, 292 F. App'x 882, 885 (11th Cir. 2008); *but see Smith v. City of Salem*, 378 F.3d 566, 571 (6th Cir. 2004). That, however, is not Martinez's argument. Rather, his contention is that "[w]hen [American] became aware that the IDHR/EEOC would not be scrutinizing its decision to terminate Mr. Martinez in connection with Charge #2014 CF 2360, Defendant terminated his employment." Pl.'s Resp. at 24. In the abstract, this is not an implausible contention. One can imagine circumstances in which an employer intending to get back at an employee for complaining about discrimination might think it better to wait until the coast is clear, so to speak, before taking action. But this theory, however plausible it might be in the abstract, does not hold water in this case. Specifically, the issuance of a right to sue letter does not mean that the coast is clear. The opposite is true: it triggers the possibility of further legal action, namely by enabling the charging party to sue in court. Thus an employer scheming to terminate a complaining employee logically would not see the issuance of a right to sue letter as

indicating that the possibility of legal action by or on behalf of the employee has come to an end.

In any event, the circumstances do not support a reasonable inference of retaliation. The period during which Martinez's EEOC charge was pending was the same period during which American effectively extended his medical leave (which was set to expire in February 2015) and attempted to search for alternative positions consistent with his physical limitations. This cuts against the notion that American intended to retaliate against Martinez for his EEOC charge. Martinez contends that Baldonado—who ultimately made the decision to terminate Martinez's employment— exhibited hostility during the search for an accommodation. Pl.'s Resp. at 25. Martinez largely rests this contention on his inability to reach Baldonado, the fact that she only located two possible transfers, and the fact that she refused to transfer him to any of his suggested positions. But Baldonado testified that she and Martinez spoke multiple times throughout the search process, and Martinez admits that she located two possible positions. Further, as discussed earlier, Martinez has failed to provide evidence from which a reasonable jury could find that Baldonado's search for alternative positions was inadequate. In short, the evidence about what happened after Martinez's EEOC charge and before his termination would not support a finding of retaliatory intent.

For the reasons discussed, the Court concludes that no reasonable jury could find in Martinez's favor on his retaliation claim and therefore grants summary judgment in favor of American on this claim.

### Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary

judgment [dkt. no. 33] and directs the Clerk to enter judgment in favor of defendant.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  January 18, 2017